UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. 2:14-cr-33 |
| | ) |
| JEREMIAH ELLIS, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Sometimes, the standard of review can make all the difference in deciding a legal issue. Jeremiah Ellis was found competent to stand trial by Magistrate Judge Andrew P. Rodovich, and Ellis now seeks review of that decision in a motion he has called a "Request for De Novo Review." [DE 229.] But the title of his motion suggests a standard of review—de novo—that is inapplicable to the present situation. Instead, the review of a Magistrate Judge's competency finding is governed by a clear error and contrary to law standard. In other words, I don't take a fresh look at the matter. To be sure, the evidence presented to Judge Rodovich on the issue of Ellis's competency was conflicting. But Judge Rodovich sifted through that evidence, made findings of fact, weighed the credibility of the witnesses and ultimately concluded that Ellis understood the nature of these proceedings and could assist in his defense. In other words, that he is competent to stand trial. I have thoroughly reviewed the transcript of the hearing before Judge Rodovich, and because I find Judge Rodovich's conclusion that Ellis is

competent to stand trial is not clearly erroneous or contrary to law, the motion [DE 229] is DENIED.

## Background

Ellis contends there is a conspiracy afoot and that world events, and his criminal prosecution, are being controlled by a shadowy organization of elites who he refers to as the "Illuminati." According to Ellis, this group is attempting to control and silence him through a conspiracy with the FBI. Magistrate Judge Paul R. Cherry was the first magistrate assigned to the case, and he determined in several orders that there was reasonable cause to believe that Ellis was suffering from a mental disease or defect rendering him mentally incompetent to the extent that Ellis was unable to understand the nature and consequences of the proceedings against him, lacked the ability to assist in his legal defense, and that he was not competent to stand trial. [DE 57, 64, 74, 84, 88.] Ellis was committed to the custody of the Attorney General and was hospitalized. His capacity was reviewed approximately every four months thereafter.

Over a five and a half year period of time, Ellis was examined by three federally employed forensic psychologists (Dr. Boutwell, Dr. Wadsworth and Dr. Lloyd) who worked at two federal medical centers (Lexington FMC and Butner FMC). The three federally employed forensic psychologists produced 7 forensic evaluation reports (Defs.'s Exs. C-I), each concluding Ellis was not competent to stand trial. Dr. Wadsworth and Dr. Lloyd went one step further and found Ellis was also "unrestorable"—meaning that he is not likely ever to be competent to stand trial.

The government eventually retained the services of a neuropsychologist, Dr. Diana Goldstein, with the Isaac Ray Center in Chicago, Illinois, to examine Ellis. Dr. Goldstein ran tests on Ellis on two separate occasions. She also exhaustively reviewed the case history as well as reports of witnesses who claimed that Ellis was lying about his mental health to avoid prosecution. The evidence reviewed by Dr. Goldstein also suggested that Ellis was teaching others on how to fake mental illness to avoid prosecution and that one pretrial detainee in Chicago had employed Ellis's techniques. Dr. Goldstein also referenced a recorded phone call between Ellis and Ashley Patterson's mother (Patterson is Ellis's co-defendant) where Ellis could be heard trying to get Patterson's mother to convince Patterson to employ the same ruse – that is, to feign mental illness to avoid prosecution. Based on these facts and other data points, Dr. Goldstein disagreed with the BOP psychologists and concluded that Ellis was "malingering," or feigning, and ultimately found Ellis competent to stand trial.

This clash of experts led to a contested hearing before Judge Rodovich to determine whether Ellis is competent to stand trial. Both parties attended and put on testimony by expert witnesses as well as offered exhibits into evidence. Judge Rodovich entered an opinion and order thoroughly reviewing the procedural history of the case and summarizing the evidence at the evidentiary hearing. [DE 226.] Judge Rodovich reached the conclusion of law that the Government had demonstrated by a preponderance of the evidence that Ellis is competent to stand trial.

Ellis thereafter filed a "Request for De Novo Review." [DE 229.] Ellis requests that I review the entire transcript and exhibits introduced into evidence during the competency hearing held before Judge Rodovich, and make a determination as to whether or not the Government introduced enough evidence at the hearing to find Ellis competent to stand trial. But before diving into the merits, there is a predicate (and critical) question: what is the standard by which I review the competency decision of Judge Rodovich? As I noted at the outset, the Government contends that the de novo standard requested by Ellis is inapplicable here and that, instead, Judge Rodovich's opinion is subject to the deferential clearly erroneous or contrary to law standard. [DE 231.] In other words, according to the Government, I don't take a fresh look at the evidence and make my own factual findings. Instead, I am only asked to decide if Judge Rodovich's findings of fact leave me with a definite and firm conviction that a mistake has been made. *United States v. Garcia*, 948 F.3d 789, 806 (7th Cir. 2020).

For the reasons discussed below, I agree with the Government that the correct standard of review is the clearly erroneous or contrary to law standard. And, as in many cases, the standard of review drives the result. In the face of conflicting and compelling evidence on each side of the issue, it would very difficult to conclude that Judge Rodovich's decision was clearly erroneous or contrary to law.

## Discussion

To be competent to stand trial, a court must determine whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding and whether he has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Although there is a presumption that a criminal defendant is mentally competent to stand trial, once the issue of mental competency is raised, the government bears the burden of proving by a preponderance of the evidence that the defendant is competent to stand trial. *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992).

As noted above, the first issue is what standard of review I should apply to Judge Rodovich's conclusion that Ellis is competent to stand trial. Although Ellis urges that I review the decision de novo, that is not the correct standard. 28 U.S.C. § 636(b)(1)(A) authorizes the designation of a magistrate judge "to hear and determine any pretrial matter pending before the court" with certain listed exceptions (none of which are applicable here). This section also provides the district judge may reconsider a magistrate judge's order if it appears to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

Because a determination of a defendant's competency is not one of the listed categories excluded by section 636, it should be classified as fitting into the broad scope of pretrial matters which magistrate judges are explicitly authorized to hear and determine. Our local rules provide a magistrate may perform all duties authorized by the United States Code and any rule governing proceedings in this court. *See* N.D. Ind. L.R. 72-1(b).

I've reviewed the competency statute itself, and it is not to the contrary. In fact, the competency statute merely refers to a motion before "[t]he court" which seems to encompass both district court judges as well as magistrate judges. 18 U.S.C. § 4241. And to the extent that a magistrate judge's authority is limited by Article III, I concur with the analysis of the court in *United States v. Prado*, No. 18-CR-192, 2019 WL 1320316, at *4 (E.D. Wis. Mar. 22, 2019), which found that although the competency decision affects fundamental rights, it is akin to allowing a magistrate judge to decide whether a defendant may waive conflict-free representation, or waive counsel and represent himself at trial, which are duties magistrate judges routinely handle.

This same issue was recognized by Judge Rodovich himself in another case, *United States v. Kasim*, No. 2:07 CR 56, 2008 WL 4822291 (N.D. Ind. Nov. 3, 2008). There, Judge Rodovich recognized that the Northern District of Indiana has adopted the awkwardly named "Dispositive Logic Table" which designates the assignment of motions between the magistrate judges and presiding district judges, and the table assigns orders of competency to stand trial in criminal cases as "non-dispositive" and thus within the bailiwick of the magistrate judges. *Id.* at *16; see* https://www.innd.uscourts.gov/sites/innd/files/DispositiveLogic.pdf.

As best I can tell, I don't believe the Court of Appeals for the Seventh Circuit has directly addressed this question, but as the Court in *United States v. Prado* has recognized, the Seventh Circuit has occasionally noted, without further comment, that a magistrate judge found a defendant competent. *See United States v. Prado*, No. 18-CR-

6

192, 2019 WL 1320316, at *3 (E.D. Wis. Mar. 22, 2019) (citing *United States v. Cobb*, No. 97-2622, 1997 WL 786909 (7th Cir. Dec. 19, 1997); *United States v. Nance,* No. 96-2277, 1997 WL 355761 (7th Cir. June 24, 1997); *United States v. Jones*, 87 F.3d 954, 955 (7th Cir. 1996)). While it is always dangerous to draw conclusions from dicta in appellate opinions, there seems to be at least an implicit assumption that the magistrate judges are empowered to hear such motions. I have found no Seventh Circuit opinion to the contrary. Yet other district courts have reviewed a magistrate judge's finding of competency. *See, e.g., United States v. Battle*, 264 F.Supp.2d 1088, 1107-08 (N.D. Ga. 2003) (affirming magistrate judge's finding of competency). And, specifically, other district courts have reviewed a magistrate judge's determination of competency, treating it as a review of a nondispositive matter and applying the "clearly erroneous or contrary to law" review. *See, e.g., United States v. Hernandez-Garcia*, No. 8:03 CR 59, 2004 WL 1179452, at *2 (D. Neb. May 27, 2004).

All this is to say I am comfortable that Judge Rodovich had the authority to find Ellis competent to stand trial, and that my review of his decision should be whether it is clearly erroneous or contrary to law. There is no such error in Judge Rodovich's comprehensive decision.

At the competency hearing in front of Judge Rodovich, the Government put Dr. Goldstein on the stand first. To begin with, in her report, Dr. Goldstein provided an extensive list of reasons why she believed Ellis was malingering. *See generally* DE 125 at 30-34. She pointed out that none of the witnesses at the scene of the bank robbery

7

reported any kind of bizarre behavior on Ellis's part. *Id.* Nor was there any evidence of psychotic behavior when Ellis was interviewed in Missouri after being apprehended. *Id.* What's more, the FBI had interviewed 10 witnesses after Ellis's arrest; all of these people were close to him and none of them expressed any significant concerns about his mental health. *Id.* It was only after Ellis was detained that he first started displaying psychotic symptoms. *Id.* Dr. Goldstein looked askance at this sequence of events.

During the hearing, Dr. Goldstein elaborated on her findings. She testified that approximately 30 percent of the individuals she evaluates for competency to stand trial are "malingering." [Hrg. Tr., DE 225 at 7.] She defined malingering as an intentional production of symptoms that are either false or grossly exaggerated. *Id.* at 8. As I noted previously, prior to Dr. Goldstein, Ellis had been evaluated five times by other individuals associated with the Bureau of Prisons. [*Id.* at 13.] For example, Ellis had previously taken the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), which was given by Dr. Boutwell in early 2015, and scored 53. A score of 53 on this test, which measures IQ, would put Ellis in the "Extremely Low Range" or at .1% of his peers. [DE 125 at 9.] Yet when he took this test with Dr. Goldstein, Ellis scored an 86 which was in the Low Average Range. [*Id.* at 23.] These divergent results are very difficult to reconcile. All of the experts agreed that subjects can purposely perform poorly on an IQ test, but they can't fake their way to a better score. [DE 226 at 6.] For this reason, the IQ of 86 achieved by Ellis when tested by Dr. Goldstein was found to be a much more reliable indicator of his true ability. [*Id.*]

In addition, Dr. Goldstein testified at length in the hearing about the different tests, inconsistent test results, and differing evaluations, all of which showed that Ellis is malingering. For example, Ellis claimed auditory and visual hallucinations in the first evaluation, then auditory only, then at the third evaluation no hallucinations at all. [DE 225 at 17-34.] By the time she testified, Dr. Goldstein had looked at all seven reports on Ellis and she believed none of them were consistent. [*Id.* at 34.] Dr. Goldstein testified at length as to why she discounted some of the previous tests and conclusions by the other forensic psychologists, and she ultimately concluded that he was malingering.

Included in her review of materials relating to this case, Dr. Goldstein also listened to a phone call that Ellis made to the mother of his codefendant, Ashley Patterson, in June of 2017 (about six months before Dr. Goldstein's evaluation). [*Id.* at 35-36; Gov't Ex. 3.] During the phone call, Ellis explains that he has been to the law library and educated himself on what it means to be found permanently incompetent, and it was his understanding that he would have to be let go within a period of time (Ellis says 75 days) because they are not going to find him dangerous. [DE 225 at 37.] Ellis encourages his co-defendant, Ashley Patterson, to reject her plea agreement and to do the same. [*Id.*; DE 226 at 7.] And Ellis says, "[t]here's a chance this could work." [DE 225 at 37.] This phone call was further support for Dr. Goldstein's conclusion that Ellis was malingering. For her part, Dr. Wadsworth (who also testified during the competency hearing) also listened to the call, and acknowledged having "concern"

9

about it, but it did not change her opinion on Ellis's competency.  [DE 225 at 89; 226 at 7.]

Judge Rodovich concluded that malingering was additionally indicated by statements taken from a jailhouse informant in June, July, and September 2017.  Dr. Goldstein reviewed these informant statements as well, and she considered them as lending further support to her conclusion of malingering.  [Goldstein Eval. dated 1-23-18, contained in binder Gov't Ex. 1, at 12, 33.]  According to the jailhouse informant, Ellis admitted he was faking a mental illness and believed he would be released when it was determined that his competency could not be restored.  [DE 226 at 7.]  The jailhouse informant also claimed that Ellis coached other inmates on feigning a mental illness. [*Id.*]  There is some corroboration of this claim.  One of those inmates was an individual named Adel Daoud.  According to Dr. Goldstein, a review of the docket in Daoud's case shows that he too was sending very similar letters to the court claiming a vast conspiracy involving the "Illuminati."  [DE 125 at 33.]

Finally, Judge Rodovich considered letters from Ellis to his co-defendant, Ashley Patterson, in which Ellis refers to his insanity defense and that he will be free in approximately one year because of it.  [DE 226 at 6.]  These letters were reviewed by Dr. Wadsworth before her August 22, 2016 report, and she "acknowledged that the letters written to Ashley Patterson by Mr. Ellis raise concern that Mr. Ellis could be feigning symptoms." [Wadsworth Eval. dated 8-22-16, contained in binder Gov't Ex. 1, at 8.]

10

Judge Rodovich concluded that Ellis's stated belief in the Illuminati conspiracy is nothing more than a contrived effort to avoid prosecution. He reasoned that the letters to Patterson and his telephone call "clearly demonstrate" that Ellis believes he can avoid a lengthy prison sentence by blaming the Illuminati. [DE 226 at 9.] He noted that all of the reports indicated that Ellis was cooperative during the testing procedures and during therapy sessions, and that all of the experts agree that Ellis does understand the role of the judge, jury, prosecutor, and defense attorney during a trial. [*Id.*] Judge Rodovich believes Ellis has the ability to cooperate with his attorney, if he chooses to do so. [*Id.*] To the extent there was some conflicting evidence between the psychologists and the neuropsychologist, Judge Rodovich credited Dr. Goldstein's as better reasoned and more reliable, and explained how he reached this conclusion. [*Id.* at 10-11.] He found that Dr. Boutwell failed to detect that Ellis was malingering, and her report was then relied upon by Dr. Wadsworth and Dr. Lloyd. [*Id.* at 13.]

Ellis has not demonstrated that Judge Rodovich's decision was clearly erroneous or contrary to law. His findings are plainly explained in the opinion and supported by evidence in the record. While Ellis may disagree with Judge Rodovich's ultimate conclusion, he has not pointed to anything in Judge Rodovich's methodology, procedure, or rationale that is clearly erroneous or contrary to law.

## Conclusion

For the reasons set forth above, Ellis's Request for De Novo Review [DE 229] is DENIED. Judge Rodovich properly found that Ellis is competent to stand trial.

11

**SO ORDERED**.

ENTERED: September 8, 2020

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT