UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:14-CR-33 |
| | ) |
| JEREMIAH ELLIS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before me on Jeremiah Ellis' emergency pro se motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic, mental illness, his childhood upbringing, and his alleged rehabilitation. [DE 280.] Ellis is a 36 year old male who is currently incarcerated at Sandstone FCI, in Sandstone, Minnesota, with an anticipated release date of October 14, 2032. He still has 10 years left on his 261 month sentence. [DE 286 at 4.] In his motion, Ellis requests the court reduce his sentence to time served, characterizing his incarceration as "more punitive," and contending his mental illness, COVID-19, his childhood upbringing, and his post-conviction rehabilitation are all extraordinary and compelling reasons warranting his release. [DE 280 at 2, 5.]

According to the BOP website, there are 30 inmates currently who reported positive for COVID-19 at Sandstone FCI, and 4 staff members. [*See* www.bop.gov/coronavirus/index.jsp (Last viewed 2/22/22)]. In his reply memorandum, Ellis contends that the cases are under-reported and cites professors

questioning the accuracy of the data from prisons. [DE 289 at 2.] Although I don't doubt that not every case is reported in every prison simply because of the breadth of the pandemic, the numbers are the numbers, and it is all the real data I have to rely upon. Moreover, the government summarized the significant lengths the Bureau of Prisons has gone through to curb the pandemic, including vaccine distribution, quarantine procedures, and intense modifications depending upon the Level of infection at a given facility. [DE 286 at 4-5.] Finally, as I discuss later in this opinion, Ellis' assertions that COVID-19 infections at Sandstone FCI are underreported don't establish his individualized risk. *See United States v. Burnette*, No. CT-10-01362-002-PHX-GMS, 2020 WL 6562344, at *2 (D. Az. Nov. 9, 2020).

The government has provided Ellis' medical records, which indicate that he was offered the Pfizer vaccine in prison on May 12, 2021, and he refused it. [DE 288 at 123.] Additionally, the records reveal that Ellis has been diagnosed with delusional disorder, schizophrenia, and antisocial personality disorder. [*Id.* at 15.] However, he is not currently taking any mental health medications, and Ellis seems to be in good physical health. As noted in his medical records, it was "discussed with him at length" and Ellis "does not feel he needs nor wants any medications at this time." [*Id.* at 55.] Although Ellis contends in his reply that he cannot take certain medications because he was experiencing severe side effects and his medication was discontinued; nevertheless, he is currently medication-free. [DE 289 at 2.] According to the medical records, overall, Ellis is in good physical health and his mental health seems stable, with no complaints.

2

[DE 288 at 24-25, 61-62, 67, 73, 79, 91.]

Ellis was indicted in April 2014 for bank robbery and discharge of a firearm during and in relation to a crime of violence. [DE 6.] A superseding indictment was filed on October 15, 2014, adding two Hobbs Act robberies and two charges of brandishing a firearm during and in relation to a crime of violence. [DE 28.] There was prolonged litigation over Ellis' competency to stand trial, and I entered a lengthy opinion and order on September 8, 2020, finding the magistrate judge properly determined Ellis was competent to stand trial. [DE 237.] Ellis eventually decided to plea guilty to Counts 1-5 of the superseding indictment (bank robbery, discharge of a firearm in relation to a crime of violence, two counts of Hobbs Act robbery, and brandishing a firearm during and in relation to a crime of violence), and I sentenced him pursuant to a plea agreement on January 28, 2021, to a total of 261 months imprisonment to be followed by 3 years of supervised release. [DE 238, 241, 261.] He has exhausted his administrative remedies. [DE 280-1 at 7.]

Section 3582(c)(1) permits a district judge to release a prisoner if the judge finds "extraordinary and compelling reasons" for that step, and the judge has also considered any applicable policy statement of the Sentencing Commission and reviewed the criteria of § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1). The Seventh Circuit held in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), that none of the Sentencing Commission's policy statements applies to compassionate-release requests made by prisoners themselves (as opposed to requests made by the Bureau of

3

Prisons).  However, "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.3 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" for a district court to employ.  *Id.* at 1180.

So I'm left with the question of whether an extraordinary and compelling reason justifies release – and if so, whether release is appropriate given the factors in section 3553(a).  As the Seventh Circuit has held, it is best to proceed in that order - only after finding an extraordinary and compelling reason for release need I, as part of "exercising the discretion conferred by the compassionate release statute, . . . consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner."  *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)).

I have reviewed the briefs and records in this case and conclude there are no "extraordinary and compelling reasons [that] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).  I can look to the policy statement set out in USSG § 1B1.13 for guidance, and that provision offers specific examples of what constitutes an extraordinary and compelling circumstance, including, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; family circumstances (the death or incapacitation of the caregiver of the defendant's minor child, or the incapacitation of the defendant's spouse when the defendant would be the only available caregiver for the spouse or

4

registered partner), or other reasons determined by the Director of the BOP.  USSG § 1B1.13 cmt n. 1.

First, Ellis' childhood upbringing and post-conviction rehabilitation do not constitute extraordinary and compelling factors.  While Ellis sets forth details of an alarming and traumatic childhood [DE 280 at 4], these same details are present in the PSR [DE 251 at 16], and I already took these factors into consideration when I determined an appropriate sentence for Ellis.  While Ellis has attached letters from his mother and father in support of his release [DE 280-1 at 13, 14], these do not meet the required exigent family circumstances (death of a caregiver of a minor child or incapacitation of a spouse).  Similarly, while I absolutely commend Ellis for his good behavior while in prison (earning his GED, and getting positive reviews from his work there), these factors also do not justify release.  *See United States v. Washington*, No. 5:13-020-DCR, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (defendant's claim that he "has an ideal prison record and is the prototype of a successfully rehabilitated individual" does not present an extraordinary circumstance); *United States v. Wieber*, No. 3:14-CR-74-TBR, 2020 WL 1492907, at *2-3 (W.D. Ky. Mar. 27, 2020) (denying relief where defendant took classes in prison and collecting cases stating compassionate release cannot be based on rehabilitation alone); *United States v. Carr*, No. 02-106(JDB), 2020 WL 4192560, at *2 (D. D.C. July 21, 2020) (denying compassionate release notwithstanding defendant's completion of a "wide range of classes" and drug program).

5

Ellis' health issues alone also do not constitute extraordinary or compelling reasons to reduce his sentence. He does face some mental health issues like a delusional disorder, schizophrenia, and antisocial personality disorder, but they seem to be entirely under control. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704785, at *2-3 *(*E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."). As I noted earlier in this order, his medical records indicate that Ellis' mental health was "discussed at length" with Ellis and "he does not feel he needs nor wants any medications at this time." [DE 288 at 55.]

The real question here is whether Ellis' mental health issues, along with the enhanced risk of contracting COVID-19 at Sandstone FCI, justifies his release. It is true that the CDC has recognized that certain mental health conditions like mood disorders, including depression and schizophrenia spectrum disorders, can make a person more likely to get very sick from COVID-19. [www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 2/22/22).]

However, even if one considers Ellis at an elevated medical risk were he to contract COVID-19, these medical risk factors are surpassed by the fact that Ellis has

6

refused the vaccine. *See, e.g., United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (holding prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release, reasoning a "prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an extraordinary and compelling justification for release"); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) ("Vaccines provide a much better defense against infection than any judicial order could do."); *United States v. Cross*, No. 20-3524, 2021 WL 6145626, at *1 (7th Cir. Nov. 15, 2021) (affirming denial of compassionate release where defendant "refused the vaccine, and [ ] has not asserted that he is medically unable to receive or benefit from it."); *United States v. Jackson*, No. 15-cr-2607 PAM/TNL, 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021) ("[defendant's] decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), [defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."). Ellis has provided no reason (medical or otherwise) as to why he could not receive the vaccine, and because he has refused the vaccine, this bars

7

compassionate release on the basis that he might have an elevated risk from COVID-19.

Because Ellis cannot establish extraordinary and compelling reasons for release, it is unnecessary for me to consider the section 3553(a) factors. However, I will add for the sake of completeness, that these weigh *strongly against* release. The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Ellis' crimes were extremely violent and dangerous: he and his girlfriend ran into a bank with their guns drawn and ordered customers and bank employees to the ground at gunpoint. Ellis then jumped over the teller counter and grabbed around $10,000 cash. While fleeing, Ellis' girlfriend drove their vehicle (with two young children in the backseat) while Ellis fired shots at the chasing police officers. About a week later, Ellis and his girlfriend led officers on another high speed chase in Illinois and during the pursuit, Ellis again fired at the officers. In addition to the bank robberies, Ellis also robbed two different gas stations while brandishing a gun. The serious, incredibly dangerous, and violent nature of this crime spree absolutely warrants the denial of early release. Moreover, with a release date of October 14, 2032, Ellis has a little over 10 years remaining on his sentence, and it would not promote respect for the law to allow his release at this early point in his sentence.

Finally, Ellis argues that further incarceration would be "more punitive" because the mental health services that he needs are not available during the pandemic. [DE 280 at 5.] This argument completely fails since the medical records show that Ellis' mental health is stable and he has not been taking any medication since 2016 (before the start of the pandemic). [DE 288 at 24-25, 55, 61-62, 67, 73, 79, 91.]

## Conclusion

For the aforementioned reasons, Jeremiah Ellis' emergency pro se motion motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 280] is DENIED.

ENTERED: February 22, 2022.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT